IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GOLF SOLUTIONS I, LLC,

        Plaintiff,

  v.

PRESTIGE FLAG MANUFACTURING
COMPANY, INC., and MICHAEL L. ROBERTS,

        Defendants.

ORDER ON MOTION FOR
PRELIMINARY
INJUNCTION

14-cv-869-jdp

---

    Plaintiff Golf Solutions I, LLC, makes Laser Link brand golf rangefinders, which work best when used with a flagstick equipped with reflector, which Golf Solutions also used to make. To raise cash, Golf Solutions sold the assets of its flagstick reflector business to defendant Prestige Flag Manufacturing Company, Inc. The basic deal was set out in an Asset Purchase Agreement (APA), in which Golf Solutions warranted that it had provided accurate data about its sales of reflectors. Payment terms were nailed down in a promissory note from Prestige and a personal guarantee of that note from Prestige's CEO, defendant Michael Roberts. The promissory note has a "no offset" clause, which says that payments will be made even if Prestige makes claims against Golf Solutions for breach of the APA. The personal guaranty includes a similar "unconditional" payment obligation.

    The flagstick business did not prosper after the sale. Prestige and Roberts accuse Golf Solutions, and its president, Robert O'Loughlin of lying about past sales of reflectors and they have stopped making payments on the promissory note. Now before the court is Golf Solution's

motion for a preliminary injunction compelling Prestige and Roberts[1] to pay the amounts due under the note.

The court held an evidentiary hearing on Golf Solutions's motion on February 3, 2015. Based on the evidence and argument presented at the hearing, and on the parties' submissions,[2] the court will mostly deny Golf Solutions's motion. However, the court will order that Prestige (or Roberts, if necessary) make payments due under the promissory note to an escrow account, with the terms of the escrow to be negotiated by the parties. The court will also entertain further submissions from the parties concerning the "no offset" clauses, as explained below.

Golf Solutions bears the burden of demonstrating that it has a reasonable likelihood of success on the merits, that it has no adequate remedy at law, and that it will be irreparably harmed if the court fails to grant its requested injunction. Fed. R. Civ. P. 65; *Cooper v. Salazar*, 196 F.3d 809 (7th Cir. 1999). If Golf Solutions makes that showing, the court then balances the harm to Golf Solutions if the preliminary injunction were wrongfully denied against the harm to Prestige if the injunction were wrongfully granted, as well as the public interest. *Cooper*, 196 F.3d at 813. The court notes that Golf Solutions's requested injunctive relief is enforcement of the contract via payment of the accelerated amount plus interest. *Chi. United Indus., Ltd. v. City of Chi.*, 445 F.3d 940, 945 (7th Cir. 2006) ("The normal remedy for breach of contract is an award of damages, not an order of specific performance (*i.e.*, a positive injunction)."). However, it is possible that the delay of payment could constitute irreparable harm to Golf

---

[1] The court will refer to the defendants jointly as "Prestige," except where it is useful to name both Prestige and Roberts.

[2] The court's procedures on preliminary injunctions do not provide for replies from the moving party. *See* Procedure to Be Followed on Motions for Injunctive Relief, docketed 12/30/2014. But because the matter was set for a hearing at which both sides would be heard further, the court denied Prestige's motion to strike Golf Solution's reply. Dkts. 38 and 39.

Solutions if it is in a precarious financial situation. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984).

**Success on the merits.** Golf Solutions's presentation on the merits focused nearly exclusively on the promissory note and the personal guaranty, which by their express terms obligate Prestige and Roberts to make payments "unconditionally" even if Prestige and Roberts have a claim against Golf Solutions under the APA. Prestige and Roberts focused on their claim that Prestige was fraudulently induced into entering the APA. At the hearing and in its papers (Dkt. 38, at 2), Golf Solutions took the position that it was too early in the case to respond on the merits to Prestige's fraud allegations.

But Golf Solutions has known about the fraud allegations since August, 2014, when Roberts raised the issue with O'Loughlin. And Prestige's complaint filed in the Southern District of California makes pointed allegations of fraud, identifying the spreadsheets of sales data provided by Golf Solutions as the fraudulent misrepresentations. Dkt. 33-1. Prestige's January 29, 2015, opposition to the motion for injunction may have identified some additional email, but Golf Solutions cannot credibly argue that it had no idea of the basis for Prestige's fraud claims before January 29.

At the hearing, O'Loughlin offered his explanation for why Prestige's sales were poor (Roberts unwisely changed the distribution model for flagstick reflectors), and he offered a potential explanation for some apparent discrepancies in the sales data. But Golf Solutions did not make a detailed or robust showing to rebut Prestige's claim of fraud, and counsel admitted that Golf Solutions was not prepared to do so.

The court is skeptical of Prestige's claims of fraud, which are commonplace in litigation over failed business transactions. Counsel for Prestige admitted that the alleged fraud in failing to disclose the registration status of the Smart Stick trademark was a minor issue (and in the

3

court's view, a weak claim of fraud). The fraudulent nature of the sales data is a more significant issue, particularly given that Golf Solutions warranted its accuracy in the APA. But Prestige had no witnesses to present any evidence to support its claims (although counsel offered to run through his PowerPoint slides, which would simply constitute more detailed attorney argument). Roberts's declaration, which is evidence that the court will consider, is a fairly thin presentation. But at this point, Prestige has a viable fraud in the inducement claim, which Golf Solutions did not effectively rebut. This is not a decision on the merits: the court has no doubt that Golf Solutions will ultimately mount an energetic defense. But Golf Solutions has not yet shown that it is *likely* to prevail on the merits of Prestige's fraud in the inducement claim.

But maybe this is where the "no offset" clause in the promissory note comes in. That clause provides:

> 6. <u>No Offset</u>. Payments due under this Note shall be paid without offset, recoupment, counterclaim, abatement, deferment or defense based upon any claim that Maker may have against Payee, including without limitation any claims Maker may have against Payee pursuant to the Purchase Agreement (any such claim shall be pursued in accordance with the terms and conditions of the Purchase Agreement itself).

Dkt. 8-1, at 3. By its terms, this clause would require Prestige (and Roberts as the guarantor) to make payments on the note despite their claims against Golf Solutions. At the hearing, O'Loughlin testified that he specifically negotiated the unconditional right to payment, and that he would have sold to another buyer if he did not get an absolutely guaranteed payment stream.

The question is whether the no-offset clause would be enforceable even against a fraud in the inducement claim, which is the point on which the court will entertain additional briefing from both sides. Golf Solutions has not made much of an argument on this point, and in its motion for preliminary injunction, it concedes that fraud in the inducement is one of the recognized defenses to obligations under a note governed by the UCC. Dkt. 6, at 7-8 (¶ 23).

The court anticipates Prestige's counterargument: that its obligations under the note are void because they were secured by fraud, and thus it should not be held to its promise to make payments unconditionally. The court would be inclined to think that if Prestige can show that the APA was induced by fraud, the obligations under the note to provide the required payments for the APA would be void, but neither side has presented authorities on the issue. Of course the real question now is whether such a no-offset clause can be enforced against a party who at this point has merely alleged fraud. The court will accept further submissions on these questions. Although the court indicated at the hearing that these briefs would be due Friday, the court will extend that deadline to Monday, February 9.

**Irreparable harm.** Golf Solutions's showing of irreparable harm in its motion papers was scant, based on conclusory declaration statements by O'Loughlin that it would have to go out of business if it did not receive the amounts due under the note. In its motion, Golf Solutions asked the court to enforce the acceleration clause and order payment of all amounts due, $1.125 million, plus 12 percent interest. That amount would, of course, provide more immediate cash than Golf Solutions would have received if Prestige had made the agreed-upon payments under the note. In its reply, Golf Solutions suggested in the alternative that the court order immediate payment of one installment, $375,000, to Golf Solutions, with the rest to be paid to the court, presumably pending ultimate resolution on the merits. The court does not fault Golf Solutions for proposing a more modest alternative than accelerated payment of the entire $1.125 million, but the dramatic change in the amount requested betrays a lack of specificity in Golf Solutions's presentation on how and why it faces irreparable harm without an injunction.

The bald assertion that it will go out of business is not enough without an explanation (preferably with supporting evidence) of why the lack of these payments would push Golf Solutions over the brink. At the hearing, O'Loughlin explained that Golf Solutions had debts to

5

BMO Harris Bank. But even without the payments, Golf Solutions is not in default because it has been able to keep up with interest payments, although the bank wanted to know how the principal would be retired. O'Loughlin did not testify that there was any impending credit or cash flow disaster that could be avoided only by an injunction. The court denied Presitge's request that it conduct discovery of the finances of Golf Solutions's members, but Golf Solutions made no presentation at all concerning its access to capital or financing.

In sum, Golf Solutions did not make an adequate showing of irreparable harm with its motion, and even as augmented by the evidence presented at the hearing, it is not a strong showing.

**Balance of harms.** It is obvious that Prestige would be harmed by having to make any payments to Golf Solutions, if it turns out that the APA was fraudulently induced and the flagstick business fails. Given that Golf Solutions contends that it is in a financially precarious position, Prestige will be at risk of not getting its payments back if it ultimately prevails on its claims. But Prestige made no showing that it would be harmed by being ordered to make the payments to which it had already agreed. In fact, Prestige and Roberts represent to the court that they are making the required payments into a savings account controlled by Roberts. The balance of harms tips in favor of Golf Solutions, which has made some showing that it needs the money now.

Although the court will not order immediate payment to Golf Solutions, the court will order that Prestige pay the amounts due, when they come due, into an escrow to be disbursed only by order of the court or agreement of the parties. Because the promissory note provides for 12 percent interest, payments made to escrow will accrue interest at that rate from the time they are due until they are paid to Golf Solutions, and Prestige must include this interest in the escrow. The escrow will ensure at least that payment is readily available to the prevailing party.

Except for the immediate payment of $375,000 to Golf Solutions, this escrow is the equivalent of the alternative relief requested in Golf Solutions's reply.

This brings us to the issue of security against the improvident grant of an injunction. Federal Rule of Civil Procedure 65(c) provides that the court may issue an injunction only if Golf Solutions gives security in an amount that the court considers proper to cover costs and damages to Prestige if wrongfully enjoined. But Golf Solutions offers no security whatsoever. This is not one of those cases in which the movant's entitlement to injunctive relief is so compelling that the requirement of security can be waived (although the court will not require any bond for modest relief ordered here). *Wayne Chem., Inc. v. Columbus Agency Serv. Corp.*, 567 F.2d 692, 701 (7th Cir. 1977) ("Under appropriate circumstances bond may be excused, notwithstanding the literal language of Rule 65(c)."). At the hearing, Golf Solutions suggested that it might be able to provide some form of security. Golf Solutions may submit to the court a proposal for appropriate security if it has one.

**Public interest.** Neither party has pointed to any concrete impact on the public interest flowing from this court's decision on Golf Solutions's motion for preliminary injunction. Prestige contends that the public interest would be served by not rewarding fraud, but Golf Solutions could just as easily point to the public interest in enforcing contractual obligations. The court concludes that an injunction would not be adverse to the public interest.

IT IS ORDERED that:

1. Defendant Prestige Flag Manufacturing Company, Inc.'s motion to strike plaintiff Golf Solutions I, LLC's reply brief, Dkt. 39, is DENIED.

2. The parties will negotiate terms of an appropriate escrow to hold payments due under the Promissory Note as they come due. If the parties are unable to agree on the terms of the escrow, they should present their competing terms to the court by February 17, 2015.

3. Defendants must deposit payments due under the note, as they come due, into the escrow as provided in this order. Past due amounts must be deposited within five days of establishment of the escrow.

4. Plaintiff Golf Solutions I, LLC's motion for preliminary injunction is GRANTED to the extent provided in paragraphs 2 and 3 above, but is otherwise DENIED.

5. The parties may submit briefs on the subject of the enforceability of the no-offset clause in the promissory note by February 9, 2015.

6. Plaintiff Golf Solutions I, LLC may provide additional information to the court concerning its ability to provide security as required under F.R.C.P. 65(c).

Entered February 3, 2015.

                                    BY THE COURT:

                                    /s/

                                    JAMES D. PETERSON
                                    District Judge